UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAGUN TULI, M.D., <br>           Plaintiff <br><br> v. <br><br> BRIGHAM & WOMEN'S HOSPITAL, INC., <br> ARTHUR DAY, M.D., <br>           Defendants | Civil Action No. 1:07-cv-12338 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT, ARTHUR DAY, M.D.'S MOTION FOR SUMMARY JUDGMENT

Now comes the defendant, Arthur Day, M.D. and hereby submits this Memorandum of Law in support of his Motion for Summary Judgment.

### INTRODUCTION

The defendant, Arthur Day, M.D., is entitled to summary judgment as a matter of law because the plaintiff has no reasonable expectation of establishing the essential elements of her Slander claim (Count Six) and the Intentional Interference with Advantageous Relations claim (Count Five). In addition, for the reason set forth in the *co-defendant, Brigham and Women's Hospital's Motion for Summary Judgment*, plaintiff's claims for discrimination (Count One), retaliation (Count Two) and violation of the Health Care Whistleblower Act (Count Four) are time-barred by the relevant statute of limitations and/or not supported by the facts.

### STATEMENT OF UNDISPUTED FACTS

1. Dr. Day refers to, adopts and incorporates by reference the Statement of Undisputed Facts submitted by the co-defendant, Brigham and Women's Hospital in connection with its Motion for Summary Judgment.

### *Statement of Additional Undisputed Facts*

2. In her complaint, Dr. Tuli alleges that she heard from a colleague at BWH, that a doctor who practices at another hospital, heard from someone the following statement, "that Tuli woman? I hear she's lazy and is costing the hospital a lot of money". See Plaintiff's Complaint ¶ 39.

3. Dr. Tuli testified that she had heard that another doctor, outside of BWH, was told, "that Tuli woman, I heard she is lazy and costing the hospital a lot of money and I hear she doesn't get along with patients and other physicians." *Exhibit 1, Deposition of Sagan Tuli 257:10-23.* Dr. Tuli heard this from Elaine Krikopolous, a doctor in the BI department of BWH, who heard it from a secretary in Dr. Tuli's department at BWH. See Deposition of Sagan Tuli 258:1-20. The secretary had originally heard it from her son-in-law who was a neurosurgeon at South Shore Hospital. *Exhibit 1, Deposition of Sagan Tuli 258-9:24, 103.* Dr. Tuli did not know the name of the secretary or the secretary's neurosurgeon son-in-law. *Exhibit 1, Deposition of Sagan Tuli 259:13-15.*

4. Dr. Tuli has no way of knowing that this statement came from Dr. Day and admitted that it could have been from someone else. *Exhibit 1, 261:1.*

5. At all relevant times, Dr. Tuli has been employed by Brigham and Women's Hospital.

### **ARGUMENT**

**I.  DR. DAY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIF'S SLANDER CLAIM (COUNT SIX) BECAUSE PLAINTIFF CANNOT ESTABLISH THE ESSENTIAL ELEMENTS OF THIS CLAIM.**

The Massachusetts slander tort imposes liability for a defendant's defamatory false statements to a third party. Sensing v. Outback Steakhouse of FL., Inc., 566 F.Supp.2d 24 (D.Mass. 2008); Jones v. Taibbi, 400 Mass. 786, 791-94, 512 N.E.2d 260 (1987). Slander is defamation through oral communication. LeBeau v. Town of Spencer, 167 F.Supp.2d 449, 456 (D.Mass. 2001). See Joseph R. Nolan & Laurie J. Sartorio, 37 Mass.Prac. § 7.12 (3d ed.); Restatement (Second) of Torts § 568. Specifically, "slander is that species of defamation in which the matter published is spoken or gesticulated in contrast to the more permanent medium of written words, cartoons or caricature." Joseph R. Nolan & Laurie J.

Sartorio, 37 Mass.Prac. § 7.12 (3d ed.); Restatement (Second) of Torts § 568. The elements of a defamation claim include (1) a false and defamatory communication (2) of and concerning the plaintiff which is (3) published or shown to a third party. Kibbe v. Potter, 196 F.Supp.2d 48, 74-75 (D.Mass. 2002); Dorn v. Astra USA, 975 F.Supp. 388, 396 (D.Mass.1997) (citing McAvoy v. Shufrin, 401 Mass. 593 [597], 518 N.E.2d 513, 517 (1988)).

The burden of proving the essential elements of a defamation claim is on the party bringing the claim. Kibbe, 196 F.Supp.2d at 74; See Veilleux v. Nat'l Broadcasting Co., 206 F.3d 92, 117 (1st Cir.2000). Without such proof, summary judgment should enter in favor of the moving party. Kibbe, 196 F.Supp.2d at 74; See Pardo Hernandez v. Citibank, N.A., 141 F.Supp.2d 241, 245-46 (D.P.R.2001); Croslan v. Housing Auth. for City of New Britain, 974 F.Supp. 161, 171 (D.Conn.1997). The plaintiff must meet a high standard to survive summary judgment motion on a claim for slander. See Kibbe, 196 F.Supp.2d at 74; Dorn, 975 F.Supp. at 396. The Massachusetts Supreme Judicial Court has stated that "defamation traditionally is a disfavored action", and that "courts have applied a stricter standard to complaints for defamation by requiring defamation plaintiffs to plead the elements of their claims with specificity." Kibbe, 196 F.Supp.2d at 74; Dorn, 975 F.Supp. at 395-96 (quoting Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 583 N.E.2d 228, 231 n. 7 (1991)).

To survive a motion for summary judgment, "a defamation plaintiff must plead: (1) the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statement(s); (2) the means and approximate dates of publication; and (3) the falsity of those statements." Kibbe, 196 F.Supp.2d at 74-75; Dorn, 975 F.Supp. at 396. The United States District Court for the District of

Massachusetts has held that, "to maintain an action for slander, [the plaintiff] must prove that a false assertion of fact specifically identifying her was communicated orally to a third party, thereby resulting in special damages." Scott v. Sulzer Carbomedics, Inc., 141 F.Supp.2d 154, 177 (D.Mass. 2001); Craig v. Proctor, 229 Mass. 339, 341, 118 N.E. 647 (1918).

Stating the "general tenor" of the defamatory statements, or that unspecified statements to Plaintiffs' superiors were false and maliciously made is not sufficient to defeat a motion for summary judgment. Kibbe, 196 F.Supp.2d at 75. The plaintiff must offer "the precise wording of at least one defamatory statement." Id. Additionally, the plaintiff must state the means and approximate dates of publication. Kibbe, 196 F.Supp.2d at 75. For a defamatory statement to be published it must be heard and understood by a third party. Joseph R. Nolan & Laurie J. Sartorio, 37 Mass.Prac. § 7.12 (3d ed.). The burden is also on the plaintiff to prove the falsity of the alleged defamatory statement. Craig, 229 Mass. at 341; Joseph R. Nolan & Laurie J. Sartorio, 37 Mass.Prac. § 7.12 (3d ed.).

### A. Plaintiff's slander claim must fail because she cannot demonstrate that Dr. Day made any defamatory statement to any third-party outside of the Brigham and Women's Hospital.

Dr. Day is entitled to summary judgment on plaintiff's slander claim because Dr. Tuli has not alleged, nor does she have any reasonable expectation of proving, the precise wording of any defamatory statement that was made by Dr. Day and published to anyone outside the Brigham and Women's Hospital (hereafter "BWH"). Kibbe, 196 F.Supp.2d at 75; Dorn, 975 F.Supp. at 396.

Although plaintiff has alleged that a physician from another hospital may have been told that she was "lazy" and "didn't get along with patients and other physicians," she cannot establish the identity of the physician who received this information, any facts concerning the publication of the statement, and, most importantly that Dr. Day was the source of the comment.  Accordingly, her slander claim must fail.  In her complaint, Dr. Tuli alleges only that she heard from a colleague at BWH, that a doctor who practices at another hospital, heard from someone the following statement "that Tuli woman? I hear she's lazy and is costing the hospital a lot of money". See Plaintiff's Complaint ¶ 39.  During her deposition, Dr. Tuli indicated that she had heard that another doctor, outside of BWH, was told, "that Tuli woman, I heard she is lazy and costing the hospital a lot of money and I hear she doesn't get along with patients and other physicians." *Exhibit 1, Deposition of Sagan Tuli 257:10-23*. Dr. Tuli also testified that she heard this from Elaine Krikopolous, a doctor in the BI department of BWH, who heard it from a secretary in Dr. Tuli's department at BWH. *Exhibit 1, Deposition of Sagan Tuli 257:10-23.* The secretary had originally heard it from her son-in-law who was a neurosurgeon at South Shore Hospital. *Exhibit 1, Deposition of Sagan Tuli 258-9:24, 103.*  Dr. Tuli did not know the name of the secretary or the secretary's neurosurgeon son-in-law. *Exhibit 1, Deposition of Sagan Tuli 259:13-15.* Most importantly, Dr. Tuli admitted that she had no way of knowing that this quote came from Dr. Day and admitted that it could have been from someone else. *Exhibit 1, 261:1.* She cannot establish that Dr. Day was the source of this comment. See Plaintiff's Complaint ¶ 39; *Exhibit 1, 258-261.*

Dr. Tuli's slander claim must fail because it is predicated upon pure speculation or surmise.  She cannot establish that Dr. Day was the source of the alleged "lazy" comment

5

or any derogatory statement that was published to any third-party. She has no personal knowledge concerning any such comment and she has not identified any witness who will identify Dr. Day as the source of the comment. Accordingly, her slander claim must fail.

### B. To the extent that Dr. Tuli alleges that comments Dr. Day made to the Medical Staff Credentialing Committee are the basis for her slander claim, such comments are not actionable because they are privileged.

An employer has a conditional privilege to disclose defamatory information concerning an employee when the "publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." Scott, 141 F.Supp.2d at 178; Bratt v. International Business Machs. Corp., 392 Mass. 508, 509, 467 N.E.2d 126 (1984); See also Restatement (Second) of Torts § 594, comments e and f, at 265-266 (1977). For an employer to lose this conditional privilege, the plaintiff must prove that the disclosure resulted from an expressly malicious motive, was recklessly disseminated, or involved a reckless disregard for the truth or falsity of the information. Bratt, 392 Mass. at 517; See Scott, 141 F.Supp.2d at 178. Massachusetts's case law and the Restatement of Torts support the view that recklessness should be the minimum level of misconduct that results in loss of a conditional privilege. Bratt, 392 Mass. at 514.

In the instant case, any comments Dr. Day made about Dr. Tuli during the credentialing process were protected by the conditional privilege. Dr. Tuli has not provided any evidence to support the argument that Dr. Day was in anyway reckless during her credentialing process. Additionally, Dr. Tuli has provided no evidence to show that any of Dr. Day's statements during her credentialing process were expressly malicious in motive. Therefore, any defamatory statements Dr. Day made during the credentialing process will

not support a claim of slander by Dr. Tuli. Scott, 141 F.Supp.2d at 178; Bratt, 392 Mass. at 509; See also Restatement (Second) of Torts § 594, comments e and f, at 265-266.

### C. Dr. Day is immune from liability for any statements made to the Medical Staff Credentialing Committee under Mass. Gen. L. Chapter 231, Section 85N.

Massachusetts General Law Chapter 231 section 85N was enacted to protect medical professionals' ability to openly discuss topics, such as the credentialing of physicians. The statute reads in relevant part:

> No member of a professional society or of a duly appointed committee thereof, or a duly appointed member of a committee of a medical staff of a licensed hospital or a health maintenance organization licensed under the provisions of chapter one hundred and seventy-six G shall be liable in a suit for damages as a result of his acts, omissions or proceedings undertaken or performed within the scope of his duties as such committee member, provided that he acts in good faith and in the reasonable belief that based on all of the facts the action or inaction on his part was warranted.

Mass. Gen. L. ch. 231, Section 85N.

Under this statute, Dr. Day is immune liability for any statements he made to the Medical Staff Credentialing Committee (hereafter "MSCC"). There is no dispute that the MSCC was a duly appointed committee of the medical staff at the BWH. Dr. Day cannot be liable for any statements made before the MSCC because he acted in good faith and because he reasonably believed that his statements were warranted. Therefore, any defamatory statements Dr. Day made during the credentialing process will not support a claim of slander by Dr. Tuli.

### D. Any statements Dr. Day made to the Medical Staff Credentialing Committee involved non-actionable statements of opinion.

Dr Tuli cannot bring an action for slander against Dr. Day because his comments to the MSCC were statements of opinion and thus not actionable. Pure statements of opinion, no matter how derogatory, unjustified or unreasonable, are not actionable in a defamation suit. See Lyons v. Globe Newspaper Co., 415 Mass. 258, 262-69 (1993); Pritsker v. Brudnoy, 389 Mass. 776, 778, 452 N.E.227 (1983); see also King v. Globe Newspaper Co., 400 Mass. 705, 708-09, 512 N.E.2d 241 (1987). The Supreme Judicial Court of Massachusetts has held that statements of fact may expose their authors or publishers to liability for defamation, but statements of pure opinion cannot because statements of pure opinion are constitutionally protected. King, 400 Mass. at 708-09; Aldoupolis v. Globe Newspaper Co., 398 Mass. 731, 733, 500 N.E.2d 794 (1986); Pritsker, 389 Mass. at 778.

In the seminal case of National Association of Government Employees, Inc. v. Central Broadcasting Corp. the Supreme Judicial Court adopted a two part test for determining whether a statement is non-actionable: 1) the statement must qualify as an expression of opinion, and 2) the statement must be based on disclosed nondefamatory facts. 379 Mass. 220, 227 (1979); see Cole v. Westinghouse Broadcasting Co., 386 Mass. 303, 310, 435 N.E.2d 1021 (1982) cert. Denied, 459 U.S. 1037 (1982) ("the determination of whether a statement is one of fact or opinion is generally considered a question of law").

In Myers v. Boston Magazine Co. the court discussed the generally accepted principles that are applied in determining whether a statement is an opinion:

> the court examine the statement in its totality in the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the

8

> person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

380 Mass. 336, 341 (1980) (quoting Information Control Corp. v. Genesis One Computing Corp., 611 F.2d 781, 784 (9th Cir. 19080)).

The Supreme Judicial Court has addressed the question of whether a statement constitutes an expression of opinion. Pritsker, 389 Mass. 776; Cole, 386 Mass. 303. In Cole a reporterclaimed that a television station defamed him by stating that he engaged in "sloppy and irresponsible reporting" and had a "history of bad reporting techniques". 386 Mass. at 310. The Court concluded that these statements were simply expressions of opinion concerning the plaintiff's abilities as a reporter. Id. at 312. The meaning of the statements was imprecise and open to speculation. Id. In coming to this conclusion the Court relied heavily on the rationale put forth by the Supreme Court of California when they wrote:

> "what constitutes a statement of fact in one context may be treated as a statement of opinion in another, in light of the nature and content of the communication taken as a whole. Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion"

Gregory v. McDonnell Douglas Corp., 17 Cal.3d 596, 601, 552 P.2d 425, 131 Cal.Rptr. 641 (1976).

In Pritsker the Court held that a radio-talk show host's comments that two restaurant owners were "unconscionably rude and vulgar" and "pigs" were expression of opinion. 389 Mass. 776, 778-779; see Fleming v. Benzaquin, 390 Mass. 175, 183 (1983) (holding that radio talk-show host's use of the words "dictators and Nazis" to describe conduct of a State trooper could not be understood as statements of fact).

Here, Dr. Day's statements can only be understood as expressions of opinion. Firstly, Dr. Day's language was more amorphous and loosely defined than that used in the Cole case. In Cole, the defendant directly stated the fact that a reporter had been fired because of his reporting poorly. 386 Mass. at 310. In the present case Dr. Day was asked to describe Dr. Tuli's humanistic qualities, attitudes and professional behavior. Descriptions of these attributes are by nature a matter of opinion and not assertions of fact.

Secondly, the context of a credentialing peer review provides further support for the conclusion that Dr. Day's statements would constitute opinions and not assertions of fact. Even if Dr. Day's statements were considered statements of fact in a general sense, in the context of the credentialing review process they would not be. In a defamation claim, statements must be considered within the totality of facts to ascertain if they are expressions of opinion. Tartaglia v. Townsend, 19 Mass.App.Ct. 693, 477 N.E.2d 178 (1985); See Myers 380 Mass. at 341. In Cole the Court relied on heavily on the Supreme Court of California's rationale that ,"in [a] setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact, [the relevant statements] may well assume the character of statements of opinion." Gregory, 17

Cal.3d at 601. The credentialing committee is just such an audience and therefore Dr. Day's comments to the committee should be construed as opinion.

### E. Plaintiff cannot establish that she suffered any actual injury or harm as a result of any defamatory statement by Dr. Day.

In order to prevail on a defamation claim, the plaintiff must establish that she suffered actual injury as a result of the defendant's defamatory publication. See Martin v. Roy, C.A. No. 93-07137 (*Exhibit 2*); see also Lukian v. Globe Newspaper Co., 399 Mass. 379, 381-384 (1987); Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 855 (1975); Kling v. Lyons, 345 Mass. 154, 157 (1962).

In Martin, Justice Fabricant entered summary judgment for the defendant because the plaintiff could not demonstrate that he sustained any damages as a result of the defendant's statements. Martin, slip. Op. at 22-23 (Ex. 2). The case involved a college professor's claim that he was defamed by an article in a student newspaper that suggested he obtained tenure only after successfully suing the school for racial discrimination. Id. The court stated:

> [The plaintiff] has utterly failed to prove that he suffered any damage to his reputation as a result of the statement. Martin's claimed subjective sense that the statement demeaned his position at the College, and his fear that the statement would somehow endanger his livelihood, even if credited...would not satisfy his burden of proving damages. Martin has produced no evidence whatever that the particular statement that forms his cause of action in this case had a negative effect whatever on even one person's opinion of him.

Id. slip. op. at 22 (citations omitted) (Ex. 2).

With respect to the issue of damages, the instant case is factually indistinguishable from the Martin case. Here, Dr. Tuli cannot establish that Dr. Day's statements, or the publication of those statements, caused any harm. There is no evidence that Dr. Tuli's reputation or standing in the community have been affected in any way by the statement. Dr. Tuli's only claim of harm is that it was recommended that she seek some sort of therapy, which she ultimately did not have to do.

## II. DR. DAY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS RELATIONS CLAIM (COUNT FIVE) BECAUSE PLAINTIFF CANNOT ESTABLISH THE ESSENTIAL ELEMENTS OF THIS CLAIM.

Summary Judgment is also appropriate on plaintiff's intentional interference with advantageous relations claims because Dr. Tuli has no reasonable expectation of establishing a prima facie case of intentional interference with advantageous relations. In an action for intentional interference with advantageous relations, an employee must prove that (1) she had an advantageous employment relationship with her employer; (2) the defendant knowingly induced the employer to break that relationship; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the employee was harmed by the defendant's actions. Weber v. Community Teamwork, Inc., 434 Mass. 761, 752 N.E.2d 700 (2001); Sklar v. Beth Israel Deaconess Medical Center, 59 Mass.App.Ct. 550, 554, 797 N.E.2d 381 (2003); See Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 122, 731 N.E.2d 1075 (2000), citing G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272, 571 N.E.2d 1363 (1991).

Where, as here, the claim is asserted against an individual official of the employer, the plaintiff is required to show, as to "improper motive or means," that the "controlling factor" in the alleged interference was "actual" malice; "implied" malice is not sufficient.

12

Weber, 434 Mass. at 781; Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 664, 429 N.E.2d 21 (1981); Sklar, 59 Mass.App.Ct. at 554. The Massachusetts Supreme Judicial Court has defined the requisite "malice" in this context as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest" of the employer. Weber, 434 Mass. at 783; Boothby v. Texon, Inc., 414 Mass. 468, 487, 608 N.E.2d 1028 (1993); Sklar, 59 Mass.App.Ct. at 554; See Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476, 589 N.E.2d 1241 (1992), quoting Sereni v. Star Sportswear Mfg. Corp., 24 Mass.App.Ct. 428, 432-433, 509 N.E.2d 1203 (1987). Phrased another way, a defendant's behavior must rise to a level of personal hostility or ill-will to satisfy the malice standard. Weber, 434 Mass. at 783; Sklar, 59 Mass.App.Ct. at 554; See Gram, 284 Mass.at 664, 429 N.E.2d 21; King v. Driscoll, 418 Mass. 576, 587, 638 N.E.2d 488 (1994); Draghetti v. Chmielewski, 416 Mass. 808, 816-817, 626 N.E.2d 862 (1994).

### A. The Plaintiff has no reasonable expectation of establishing that Dr. Day actually interfered with an advantageous relationship or caused Dr. Tuli any harm.

Even if Dr. Tuli's allegations against Dr. Day are true, they do not rise to the level necessary to prove a prima facie case against Dr. Day for Intentional Interference with Advantageous Relations. Dr. Tuli alleges that Dr. Day's actions resulted in the BWH recommending that she seek counseling. Subsequently, Dr. Tuli obtained an injunction so that she would not be required to seek counseling. This does not constitute the level of harm necessary to support a claim for Intentional Interference with Advantageous Relations.

In fact, Dr. Tuli has not been harmed at all by Dr. Day's actions, as the injunction she obtained prevented her from having to undergo the therapy that was recommended for her. She has not been forced to change jobs, she has not had her authority curtailed, she has not suffered a pay decrease, and she has not presented any evidence that her supervisors have begin questioning or discrediting her work. Dr. Tuli's only claim to harm is the recommendation that she seek some sort of therapy, which she ultimately did not have to adhere to.

### B. Any statements made by Dr. Day to the Medical Staff Credentialing Committee during the credentialing process are privileged

As discussed above Dr. Day is protected from liability in any suit for damages as a result of any statements made to the MSCC during the credentialing process by Massachusetts General Law Chapter 231 section 85N. There is no dispute that the MSCC was a duly appointed committed of the medical staff at the BWH. The plaintiff has provided no evidence Dr. Day cannot be liable for any statements made to the MSCC because he acted in good faith and because he reasonably believed that his statements were warranted.

### C. The plaintiff cannot sustain her burden of demonstrating that Dr. Day acted in bad faith or with actual malice

Dr. Tuli has provided no evidence to show that Dr. Day acted in bad faith or with a "a spiteful, malignant purpose, unrelated to the legitimate corporate interest" of the employer such that Dr. Day's actions would constitute malice. Weber, 434 Mass. at 781; Boothby, 414 Mass. at 487; Sklar, 59 Mass.App.Ct. at 554; See Wright, 412 Mass. at 476, quoting Sereni, 24 Mass.App.Ct. at 432-433. Dr. Tuli has also failed to provide any evidence to show that actual malice was the controlling factor in Dr. Day's alleged interference.

14

Therefore the plaintiff has not fulfilled their burden to establish a claim for Intentional Interference with Advantageous Relations or their burden to establish that M.G.L.c. 231 § 85N is not applicable in the present case.

### III. DR. DAY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR DISCRIMINATION (COUNT ONE), RETALIATION (COUNT TWO) AND VIOLATION OF HEALTH CARE WHISTLEBLOWER ACT (COUNT FOUR) FOR THE REASONS SET FORTH IN THE CO-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

Dr. Day is also entitled to summary judgment as a matter of law on plaintiff's discrimination (Count One), retaliation (Count Two) and violation of the Health Care Whistleblower Act (Count Four) because the claims are time-barred and/or plaintiff has failed to produce sufficient evidence to support such claims. <u>Dr. Day hereby refers to, adopts and incorporates by reference the arguments set forth in the co-defendant, Brigham and Women's Hospital's Motion for Summary Judgment with respect to these claims and issues.</u>

### CONCLUSION

WHEREFORE, based on the reasons and precedents elucidated herein, Defendant, Dr. Arthur Day, respectfully submits that he is entitled to Summary Judgment as to all claims of the plaintiff.

                                                Respectfully submitted,
                                                By their attorney,

                                                s/ John P. Ryan

Dated:  December 5, 2008                     _____
                                                John P. Ryan, BBO #435660
                                                John A. Donovan III, BBO #631110
                                                Sloane & Walsh, LLP
                                                3 Center Plaza
                                                Boston, MA  02108
                                                (617) 523-6010

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December 2008, that the within was electronically filed with the Court using the ECF system. The following counsel of record are registered with the Court and will be served electronically through the ECF system and by regular mail, postage prepaid: Margaret M. Pinkham, Brown Rudnick LLP, One Financial Center Boston, MA 02111, mpinkham@brownrudnick; Robert Hamel, Melick Porter and Shea, 28 State Street, Boston, MA and Deborah Thaxter, Nixon Peabody, LLP, 100 Summer Street, Boston, MA 02110-2131;

/s/ Christopher M. Reilly
_____
Christopher M. Reilly

S:\TULI, SAGUN V. DAY, MD., ARTHUR - RM-360-2875\Pleadings\Summary Judgment\Tuli - Memo in Support of Summary Judgment - DRAFT2 CMR.doc