UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAGUN TULI, M.D., ) | CA No.: 1:07-cv-12338NG |
| Plaintiff, ) | |
| v. ) | |
| BRIGHAM & WOMEN'S HOSPITAL, INC. ) ARTHUR DAY, M.D., ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE TESTIMONY OF PETER GLICK, PHD.**

"If an employer acts upon stereotypes about sexual roles in making employment decisions, or allows the use of these stereotypes in the creation of a hostile or abusive work environment, then the employer opens itself up to liability under Title VII's prohibition of discrimination on the basis of sex." *Centola v. Potter*, 183 F. Supp. 2d 403 (D. Mass. 2002). Numerous federal courts have held that punishing employees for failure to conform to sex stereotypes is a form of sex discrimination under Title VII. "In the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1980). *See also Thomas V. Eastman Kodak Co.* 183 F.3d 38 (1st Cir. 1998) (Title VII's prohibition of disparate treatment "extends both to employer acts based on conscious racial bias and to employer decisions that are based on stereotyped thinking or other forms of less conscious bias").

1

As the subtleties of sex stereotyping are not within the common knowledge of most jurors and lay persons, it seems quite clear that proof of sex stereotyping requires expert testimony. Dr. Peter Glick's testimony in this case will address the science of sex stereotyping and discrimination and will assist the jury in making the ultimate finding on whether Dr. Tuli was the victim of gender discrimination. Having failed to challenge Dr. Glick's credentials and experience, the Defendants have essentially admitted that he is qualified to offer expert testimony – a conclusion that is amply supported by even a cursory review of his curriculum vitae.[1] Through a social framework analysis, Dr. Glick will provide the jury with information that it can use to analyze and evaluate various negative characterizations that the Defendants and others have used to describe Dr. Tuli – i.e., he will help the jury understand findings from social science research about prejudice and stereotyping, from which the jury may conclude that the negative evaluations and characterizations of Dr. Tuli were the result of sex stereotyping.

Dr. Glick will also explain how "category"-based discrimination is evident when people can rely on a non-discriminatory rationale or pretext for negative views in order to appear non-discriminatory, and that relying on subjective criteria focusing on social interactions is a "safe" way to discriminate since it is hard to argue with a completely subjective characterization of someone as "difficult" or "lacking sufficient interpersonal skills." Indeed, the Defendants rely not only on Dr. Day's view of Dr. Tuli as "difficult," but a litany of other male doctors and residents have parroted this characterization – male doctors criticized her for being "aggressive" and "demanding" and she was thought to be

---

[1] Dr. Glick's CV is set forth on pages 44-57, Exhibit 1, of Doc. 157-2. Dr. Glick has been a Professor of Psychology at Lawrence University in Wisconsin for ten years, and in 2007, was named the Henry Merritt Wriston Professor in the Social Sciences. He has written three books, more than a dozen book chapters and more than forty peer-reviewed articles on stereotyping and prejudice.

2

"not a team player" or "not collaborative" if she had a different opinion of how cases should be handled, and didn't couch her opinion in a "sensitive" way.

Dr. Glick specializes in the study of ambivalent sexism, which includes both benevolent sexism, (i.e., an affectionate but patronizing attitude toward women who comply with social norms of the way women are "supposed" to be); and hostile sexism, (i.e. negative attitudes toward women who do not conform with cultural ideas of how a woman should behave). For example, women who are viewed as challenging male authority or invading "male" domains are viewed in a negative manner for the same conduct that is tolerated or applauded in men. Similarly, conduct by a male who is aggressive, loud and/or abusive may be described as simply "boys will be boys," but such behavioral patterns exhibited by a woman result in a much more negative evaluation, including the gender-laden "bitch" description. Dr. Glick will also testify that women may subconsciously hold other women to different behavioral standards than they apply to men in the same roles, and even egalitarian individuals endorse the view that women (more so than men) should be "nice." In professional roles where both men and women act in ways that conflict with the "niceness" prescription, women will be judged more negatively than men when they demonstrate traditionally male behaviors – such as assertiveness. Women who hold high-status jobs in traditionally male fields elicit hostility if they violate the social construct that women should be nice and defer to others. Scientific literature establishes that women who demonstrate the very same assertive behavior as men are rewarded less, or penalized more, than the men.

Dr. Glick will also explain that organizational characteristics can either exacerbate or mitigate discrimination and that factors such as whether an organization is

male-dominated, tolerates sexist behavior, enforces non-discriminatory policies, or whether it uses objective or subjective criteria in personnel evaluations, all play a role in creating an environment in which discrimination is either tolerated or addressed. Finally, having reviewed the deposition testimony of a number of witnesses, Dr. Glick expresses his opinion that certain statements and conduct evident in the witnesses' depositions are quite consistent with what is known about the operation of stereotyping and discrimination, and he provides certain examples: Dr. Tuli was characterized as volatile and difficult for the same conduct that was tolerated in male surgeons; male residents who were "bad boys" when they offended nurses or were the subject of Dr. Tuli's complaints were given a slap on the wrist, while Dr. Tuli was the subject of extreme hostility when she behaved in an assertive manner; Dr. Day's descriptions of Dr. Rose Du are consistent with benevolent sexism as he describes her as "quiet, very unassuming," "sweet" and very smart "though you would never know it," presumably because she is modest and not self-promoting. The descriptions of Dr. Tuli as "difficult" and the distaste that Dr. Day and others show for her assertive (or "masculine") behavior closely mirror research findings that woman who succeed in male professions and/or who act assertively are demeaned as cold, rude or insensitive.

    The type of testimony offered by Dr. Glick has been routinely accepted in discrimination cases for more than twenty years. In fact, one of Dr. Glick's frequent collaborators, Dr. Susan Fiske, was the "well-qualified" expert who testified on behalf of the plaintiff at trial in *Hopkins v. Price Waterhouse*, 618 F. Supp. 1109, 1117 (D.D.C. 1985).[2] Ms. Hopkins was criticized by Price Waterhouse partners for lacking

---

[2] Lee, T., Fiske, S. T., & Glick, P. (Eds.). (in preparation). Special Issue on Ambivalent Sexism. *Sex Roles*; Cuddy, A. J. C., Fiske, S. T., Kwan, V. S. Y., Glick, P., Demoulin, S., Leyens, J-Ph. et al. (in press); *Is the*

4


interpersonal skills, and described as "overly aggressive, unduly harsh, difficult to work with and impatient with staff." *Id.* at 1113. Dr. Fiske testified that sexual stereotyping can lead to negative judgment of women in traditionally male-dominated organizations, and that some of the comments about Ms. Hopkins were influenced by sex stereotypes. *Hopkins v. Price Waterhouse*, 373 F. Supp. 1202, 1206 (D.D.C. 1990). The *Hopkins* trial court found:

> Some comments on other women partnership candidates in prior years support the inference that the partnership evaluation process at Price Waterhouse was affected by sexual stereotyping. Candidates were viewed favorably if partners believed they maintained their femininity while becoming effective professional managers . . . . Comments suggesting that

---

*Stereotype Content Model culture-bound? A cross-cultural comparison reveals systematic similarities and differences.* British Journal of Social Psychology; Cuddy, A. J. C., Fiske, S. T., & Glick, P. (2008). *Warmth and competence as universal dimensions of social perception: The Stereotype Content Model and the BIAS Map.* To appear in M. P. Zanna (Ed.). Advances in Experimental Social Psychology (Vol. 40, pp. 61-150). Thousand Oaks, CA: Academic Press; Fiske, S. T., Cuddy, A. J. C., & Glick, P. (2007). *Universal dimensions of social cognition: Warmth and competence.* Trends in Cognitive Science, 11, 77-83; Cuddy, A. J. C., Fiske, S. T., & Glick, P. (2007). *The BIAS Map: Behaviors from intergroup affects and stereotypes.* Journal of Personality and Social Psychology, 92, 631-648.

Glick, P., Fiske, S. T., Abrams, D., Dardenne, B., Ferreira, M. C., Gonzalez, R., Hachfeld, C., Huang, L-L., Hutchison, P., Kim, H-J., Manganelli, A. M., Masser, B., Mucchi-Faina, A., Okiebisu, S., Rouhana, N., Saiz, J. L., Sakallı-Ugurlu, N., Volpato, C., Yamamoto, M., Yzerbyt, Y. (2006). *Anti-American Sentiment and America's Perceived Intent to Dominate: An 11-Nation Study.* Basic and Applied Social Psychology, 38, 363-373; Cuddy, A. J. C., Fiske, S. T., & Glick, P. (2004). *When professionals become mothers, warmth doesn't cut the ice.* Journal of Social Issues, 4, 701-718. Glick, P., Lameiras, M., Fiske, S. T., Eckes, T., Masser, B., Volpato, C., Manganelli, A. M., Pek, J., Huang, L., Sakalli-Ugurlu, N., Castro, Y. R., D'Avila Pereira, M. L., Willemsen, T. M., Brunner, A., Six-Materna, I, & Wells, R. (2004). *Bad but bold: Ambivalent attitudes toward men predict gender inequality in 16 nations.* Journal of Personality and Social Psychology, 86, 713–728; Fiske, S. T., Cuddy, A. J. C., Glick, P., & Xu, J. (2002). *A model of (often mixed) stereotype content: Competence and warmth respectively follow from perceived status and competition.* Journal of Personality and Social Psychology, 82, 878-902; Glick, P., & Fiske, S. T. (2001). *Ambivalent sexism.* In M. P. Zanna (Ed.), Advances in Experimental Social Psychology (Vol. 33, pp. 115-188). Thousand Oaks, CA: Academic Press; Glick, P., & Fiske, S. T. (2001). *An ambivalent alliance: Hostile and benevolent sexism as complementary justifications of gender inequality.* American Psychologist, 56, 109-118.

interpersonal skills, and described as "overly aggressive, unduly harsh, difficult to work with and impatient with staff." *Id.* at 1113. Dr. Fiske testified that sexual stereotyping can lead to negative judgment of women in traditionally male-dominated organizations, and that some of the comments about Ms. Hopkins were influenced by sex stereotypes. *Hopkins v. Price Waterhouse*, 373 F. Supp. 1202, 1206 (D.D.C. 1990). The *Hopkins* trial court found:

> Some comments on other women partnership candidates in prior years support the inference that the partnership evaluation process at Price Waterhouse was affected by sexual stereotyping. Candidates were viewed favorably if partners believed they maintained their femininity while becoming effective professional managers . . . . Comments suggesting that

---

*Stereotype Content Model culture-bound? A cross-cultural comparison reveals systematic similarities and differences.* British Journal of Social Psychology; Cuddy, A. J. C., Fiske, S. T., & Glick, P. (2008). *Warmth and competence as universal dimensions of social perception: The Stereotype Content Model and the BIAS Map.* To appear in M. P. Zanna (Ed.). Advances in Experimental Social Psychology (Vol. 40, pp. 61-150). Thousand Oaks, CA: Academic Press; Fiske, S. T., Cuddy, A. J. C., & Glick, P. (2007). *Universal dimensions of social cognition: Warmth and competence.* Trends in Cognitive Science, 11, 77-83; Cuddy, A. J. C., Fiske, S. T., & Glick, P. (2007). *The BIAS Map: Behaviors from intergroup affects and stereotypes.* Journal of Personality and Social Psychology, 92, 631-648.

Glick, P., Fiske, S. T., Abrams, D., Dardenne, B., Ferreira, M. C., Gonzalez, R., Hachfeld, C., Huang, L-L., Hutchison, P., Kim, H-J., Manganelli, A. M., Masser, B., Mucchi-Faina, A., Okiebisu, S., Rouhana, N., Saiz, J. L., Sakallı-Ugurlu, N., Volpato, C., Yamamoto, M., Yzerbyt, Y. (2006). *Anti-American Sentiment and America's Perceived Intent to Dominate: An 11-Nation Study.* Basic and Applied Social Psychology, 38, 363-373; Cuddy, A. J. C., Fiske, S. T., & Glick, P. (2004). *When professionals become mothers, warmth doesn't cut the ice.* Journal of Social Issues, 4, 701-718. Glick, P., Lameiras, M., Fiske, S. T., Eckes, T., Masser, B., Volpato, C., Manganelli, A. M., Pek, J., Huang, L., Sakalli-Ugurlu, N., Castro, Y. R., D'Avila Pereira, M. L., Willemsen, T. M., Brunner, A., Six-Materna, I, & Wells, R. (2004). *Bad but bold: Ambivalent attitudes toward men predict gender inequality in 16 nations.* Journal of Personality and Social Psychology, 86, 713–728; Fiske, S. T., Cuddy, A. J. C., Glick, P., & Xu, J. (2002). *A model of (often mixed) stereotype content: Competence and warmth respectively follow from perceived status and competition.* Journal of Personality and Social Psychology, 82, 878-902; Glick, P., & Fiske, S. T. (2001). *Ambivalent sexism.* In M. P. Zanna (Ed.), *Advances in Experimental Social Psychology* (Vol. 33, pp. 115-188). Thousand Oaks, CA: Academic Press; Glick, P., & Fiske, S. T. (2001). *An ambivalent alliance: Hostile and benevolent sexism as complementary justifications of gender inequality.* American Psychologist, 56, 109-118.

> sex stereotypes may have influenced the partners' evaluations of interpersonal skills were not frequent, but they appear as part of the regular fodder of the partnership evaluations.

*Hopkins,* 618 F. Supp. 1109, 1117-1118:

> Although the stereotyping by individual partners may have been unconscious on their part, the maintenance of such a system that gave weight to such biased criticisms was a conscious act of the partnership as a whole . . . [P]laintiff appears to have been a victim of 'ommissive and subtle' discrimination created by a system that made evaluations based on "outmoded attitudes" determinative.

*Id.* at 1119.

The *Hopkins* court did not consider social framework testimony to be a "junk science" and such testimony has been admitted in a variety of cases on a variety of topics because the specialized knowledge of the experts is helpful to the jury. *See, e.g., Dukes v. Wal-Mart*, 474 F. 3d 1214 (9th Cir. 2007 ) (admitting social framework analysis of Dr. Beilby on defendant's policies and practices and an evaluation of them "against what social science shows to be factors that create and sustain bias and those that minimize bias" and research demonstrating gender stereotypes are especially likely to influence personnel decisions when based on subjective factors); *EEOC v. Morgan Stanley Co.*, 324 F. Supp. 2d 451 (S.D.N.Y. 2004) (denying defense motion in limine to exclude social framework testimony from PhD in sociology on pertinent social science research on gender bias in the workplace, particularly in male-dominated work environments); *Banaitis v. Mitisubishi Bank, Ltd.*, 879 P.2d 1288 (Or. App. 1994) (affirming introduction of expert social framework testimony about Japanese business practices and how Japanese business would view an employee who refused to divulge requested financial information, which "provided context for understanding defendant's appetite for information and that plaintiff would be viewed as disloyal" and more likely to be subject

6

to retaliation); See also *Nixon v. United States*, 278 A. 2d 582 (DC App. 1999)(affirming admission of expert testimony on battered women's syndrome despite fact that expert offered no opinion on whether plaintiff had been abused or on defendant's guilt or innocence because, with information from expert, "jurors were in a better position to determine whether these patterns of behavior might explain any perceived discrepancy" between what plaintiff said and what she did).

The case of *Butler v. Home Depot*, 984 F. Supp. 1257 (N.D.Cal. 1997) is particularly instructive on this issue. In *Butler*, the trial court denied the defense motions to exclude all three experts who were social scientists (including both Drs. Susan Fiske and William Bielby, whose testimony had been previously allowed in cases cited above). The trial court found testimony on the "causes, manifestations and consequences of gender stereotyping as well as the organizational circumstances which allow such stereotypes to flourish, . . . both relevant and of assistance to the jury." *Id*. at 1264.

The single case relied upon by the Defendants, *Chadwick v. Wellpoint, Inc.*, 550 F. Supp. 2d 140 (D. Me. 2008) is easily distinguished. The stereotyping expert in *Chadwick* offered an opinion that when the female decisionmaker told the female applicant "Bless you" after learning that she had triplets, it was a stereotyped remark differentiating mothers of young children from fathers of young children. The court ruled that it would be improper to allow the expert to testify what the decisionmaker "meant" by that phrase.

Wherefore, the Plaintiff Doctor Sagun Tuli respectfully requests that the court deny the Defendants' motion to exclude Dr. Glick's testimony.

Respectfully submitted,

PLAINTIFF,
Sagun Tuli, M.D.,

By her attorneys,

/s/ Margaret M. Pinkham
Margaret Pinkham (BBO #561920)
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
(617) 856-8265
mpinkham@brownrudnick.com

Dated: December 22, 2008

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone not able to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Margaret M. Pinkham
Margaret M. Pinkham

# 1619181 v1 - pinkhamm - 027218/0001