UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAGUN TULI, M.D.,<br>　　　　　Plaintiff,<br>v.<br><br>BRIGHAM & WOMEN'S HOSPITAL, INC.<br>ARTHUR DAY, M.D.,<br>　　　　　Defendants. | Civil Action No.: 1:07-cv-12338NG |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS SECOND EMERGENCY MOTION TO COMPEL BRIGHAM & WOMEN'S HOSPITAL, INC.
TO PRODUCE SURGERY LISTS**

**I.   INTRODUCTION**

With a January 12, 2009 trial date fast approaching, Dr. Sagun Tuli is again forced to seek this Court's assistance in obtaining documents from the Defendant, Brigham & Women's Hospital ("BWH"), which are clearly relevant to her claim of retaliation under the Health Care Whistleblower Act.

**II.   BACKGROUND**

Dr. Tuli has been trying for over nine months to obtain the surgeon listing data directly from the BICS database from BWH. These documents are undisputedly relevant to her claim of retaliation under the Health Care Whistleblower Act, yet BWH continues to obstruct Dr. Tuli's access to these documents. On March 14, 2008, Dr. Tuli served her Second Request for Production of Documents and on April 30, 2008, BWH provided its response. In relevant part, Request and Response Number 17 stated:

> REQUEST 17: All documents identifying the neurosurgery cases performed by all surgeons from 2002 to current.
>
> RESPONSE 17: Objection. The defendant objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The defendant further objects to this

request to the extent that it seeks personal medical information protected under HIPPA. Notwithstanding, and without waiving this objection, subject to the joint confidentiality stipulation entered into between the parties, and the Order of the Court in this regard, **the defendant agrees to search for and produce the neurosurgery cases performed by all surgeons in the Department of Neurosurgery from 2002 to the present, in redacted form, with identifying information supplied.** (emphasis added)

Upon receipt of this response, counsel engaged in discussions in which it was identified that the responsive documents were contained in an internal database known as the BICS database. Further, in a conciliatory effort to reduce the claimed burden on BWH and to expedite the production of the requested information, Dr. Tuli agreed to narrow her request to just the neurosurgery cases performed by Dr. Day and to accept the redaction of patient names and medical record numbers, so long as the information provided was sufficient for Dr. Tuli to ascertain the information she needed to support her claim. One of the items that was discussed was the patient date-of-birth field, since that information was necessary to compare a procedure from the BICS database to the Morbidity & Mortality lists ("M&M lists") in order to determine whether a particular complication had been included on the M&M lists that were submitted to the Quality Assurance and Risk Management Committee.

Dr. Tuli continually maintained her right to seek additional information, including medical record numbers. After producing a single responsive page on October 24, 2008, BWH refused to produce any additional documents. Accordingly, Dr. Tuli was forced to file her first Emergency Motion to Compel the Surgery Listings on November 2, 2008. After hearing on November 12, 2008, Magistrate Collings allowed Dr. Tuli's motion and ordered BWH to produce the lists from 2005 to the present on or before close of business on November 14, 2008 and the lists from 2002-2004 on or before the close of business on November 21, 2004.

Rather than produce the requested documents directly from the BICS database, however, BWH manipulated the data and placed it into an excel spreadsheet. And, despite assuring

2

counsel for Dr. Tuli that the information produced was identical to the information in the BICS database, the information in fact omitted or truncated certain descriptive fields. The data produced on November 14, 2008 did not include the patient's date of birth, which was crucial to identifying whether the patient at issue was the same patient who previously had surgery (since BWH refused to produce medical record numbers). It was not until December 1, 2008 that BWH produced the patients' dates of birth from the BICS database. After reviewing the data as produced, counsel for Dr. Tuli informed BWH that the information, as manipulated, was insufficient and again requested the information directly from the BICS database. Additionally, Dr. Tuli requested that the production from the BICS database also include listings for Dr. Friedlander from 2005-2007 and Dr. Du from 2006-2007, as these two doctors frequently operate with Dr. Day or at his direction. On Friday, December 19, 2008, BWH finally produced the requested listings for Dr. Day only, without the medical record numbers associated with each patient, and refused to produced the limited data requested for Drs. Friedlander and Du.

### III. ARGUMENT

The BICS data is plainly relevant to Dr. Tuli's Health Care Whistleblower Act claim, Mass. Gen. Laws ch. 149, §187(b), and is essential to demonstrating that certain complications were not reported on the departmental lists as part of Dr. Day's effort to minimize the reporting of complications, from which the jury can find that he retaliated against Dr. Tuli for her role in reporting and investigating complications as the Department's representative to the Quality Assurance and Risk Management Committee ("QARM"). As evidenced by the deposition testimony of Janet Barnes, which remains sealed, Dr. Tuli was asked to improve the quantity and quality of reporting from the neurosurgery department. Ms. Barnes' testimony, as reflected in this Court's July 11, 2008 Order, indicated that Dr. Day was angered by "his belie[f] that he was

being reported to the Board by Dr. Tuli" after Dr. Tuli had investigated certain complications of Dr. Day that the QARM Committee subsequently reported to the Board of Registration of Medicine.

Additionally, as evidenced by the deposition testimony of Dr. Marc Johnson, the M&M lists were frequently manipulated and either did not contain all of the complications that occurred, or did not contain sufficient information to understand a complication that did occur. See Excerpt of Deposition of Marc Johnson, M.D., attached hereto as Exhibit A ("My sense was that not all complications were reported [on the M&M lists], and some complications were reported which were not complications."; "Q…have you observed any practice of the complications that are on the list being miscategorized? A. Yes."; " Q. Have you noticed whether any other complications on the M&M list have been categorized in ways that don't fully disclose the facts of the case and the complication? A. There was another case that comes to mind.").

Only by comparing the listing of Dr. Day's surgeries, or the surgeries of the surgeons who worked at his direction (Dr. Friedlander and Dr. Du), to the M&M lists prepared by neurosurgery residents, can Dr. Tuli ascertain whether specific surgeries or procedures come within the parameters to be considered "complications," including, for example, re-operations within seven days, surgical site infections, neurologic deficits or unexpected deaths. Initially, the spreadsheets provided by BWH only identified the date of the procedure, the patient's date of birth, the surgeon (Dr. Day), and a general two-word description of the procedure. Dr. Tuli again told BWH that the manipulated data was insufficient because of the manner in which BWH had truncated the description of the procedures, there was less clarity in making a conclusion that a particular procedure falls within the criteria of a complication. Finally, on

4

Friday, December 19, 2008, BWH produced new spreadsheets which revealed that the descriptive fields that were originally produced in November had been omitted or truncated.

However, despite the fact that there is a Confidentiality Agreement in place, BWH has still refused to list the patient medical record number, which is a series of numbers unique to every patient. Of course, it would be easier to identify re-operations on the same patient that occur within seven days (which is considered a complication) using the medical record number. Medical record numbers are also used on the neurosurgery M&M lists (or complication lists) that have been produced in this case. By comparing complications evident on the BICS database with the M&M lists, Dr. Tuli can establish that certain complications were, or were not, reported to the QARM Committee. Dr. Tuli has agreed that patient names shall remain confidential. The medical record numbers, while unique to each patient, would not reveal patient names to the public and there is no good reason why Dr. Tuli should not be permitted to discover this data as it appears in the BICS database.

Dr. Tuli also seeks BICS data for two other surgeons for a limited time frame. Dr. Day and Dr. Friedlander often operate together, and Dr. Friedlander frequently operates at Dr. Day's request or instruction. The same is true for Dr. Du, who was Dr. Day's fellow from 2006-2007, and was hired by him to become an attending physician in July 2007. A single patient who has been operated on two times within a seven day period likely has experienced a complication. There is no requirement that the same surgeon conduct both the first operation and the re-operation. As such, if Dr. Day operated on a patient who required another procedure within seven days, he may not always perform the second operation. Given that Dr. Day frequently collaborates with both Drs. Du and Friedlander, an examination of their BICS data may establish that they performed re-operations on Dr. Day's patients who experienced complications. If

5

indeed there were re-operations on Dr. Day's patients performed by other surgeons, which were not included on the M&M lists, a jury may rely on that as further evidence that Dr. Day seeks to minimize any reporting of his complications, which supports Dr. Tuli's HealthCare Whistleblower claim.

### III.   BWH Should be Required to Pay the Costs of Bringing this Motion.

Dr. Tuli requests that BWH be required to pay the costs of this motion pursuant to Fed. R. Civ. P. 37(a)(5). This is the fourth motion to compel documents that was necessitated by an attitude on the part of BWH that certain documents, though clearly relevant and not privileged, would not be produced without a court order. A rebuttable presumption exists in favor of imposing expense shifting sanctions on the party against whom a motion to compel is resolved. Fed. R. Civ. P. 37(a)(5)(A).

### IV.   Conclusion.

For the above stated reasons, Dr. Tuli respectfully requests that the Court compel Brigham & Women's Hospital, Inc. to produce (a) the BICS database printouts for Dr. Freidlander as Surgeon 1 and Surgeon 2 in any case from 2005-2007; (b) the BICS database printouts for Dr. Du as Surgeon 1 and Surgeon 2 in any case from 2006-2007; and (c) the medical record numbers associated with each patient on the lists previously produced, and any new production Additionally, Dr. Tuli requests that BWH be required to pay the costs, including attorneys' fees, of bringing this Motion.

                                              Respectfully submitted,
                                              **Sagun Tuli, M.D.**,
                                              By her attorneys,

                                              /s/Rachel A. Lipton
                                              Margaret M. Pinkham (BBO #561920)
                                              Rachel A. Lipton (BBO #664402)
                                              Brown Rudnick LLP
                                              One Financial Center
                                              Boston, MA 02111
                                              (617) 856-8200
                                              mpinkham@brownrudnick.com
                                              rlipton@brownrudnick.com

Dated: December 22, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone not able to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                              /s/Rachel A. Lipton
                                              Rachel A. Lipton

Dated: December 22, 2008

# 1621600 v1 - LIPTONRA - 027218/0001