UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| SAGUN TULI, M.D.,<br>    Plaintiff,<br><br>v.<br><br>BRIGHAM & WOMEN'S HOSPITAL, Inc.,<br>and ARTHUR DAY, M.D.,<br>    Defendants. | )<br>)<br>)<br>)          Civil Action No. 07cv12338-NG<br>)<br>)<br>)<br>) |

GERTNER, D.J.:

## MEMORANDUM AND ORDER RE: ATTORNEY'S FEES
June 8, 2009

## I.    INTRODUCTION

The plaintiff, Sagun Tuli ("Tuli"), moves for attorneys' fees after a successful trial of her claims of hostile work environment (an award against Brigham & Women's Hospital, Inc. ("BWH") of $1,000,000.00), retaliation for her discrimination claims (against BWH for $600,000.00), retaliation under the Health Care Whistleblower Act (against BWH for $1.00), intentional interference with advantageous relations (against Dr. Arthur Day ("Dr. Day") for $20,001.00), and slander (against Dr. Day for $1.00).  Plaintiff was represented by Margaret M. Pinkham with assistance from Paul Shaw, Camille V. Gerwin, Rachel Lipton, and others at Brown Rudnick Berlack Israels LLP.  Plaintiff has submitted a fee application under Title VII, 42 U.S.C. § 2000e-5(k), Mass. Gen. Laws ch. 161B, § 9, and Mass. Gen. Laws, ch. 149, § 187(d)(5).[1]

---

[1] Title VII provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs."  The analogous Chapter 151B provision provides that a prevailing plaintiff shall be awarded "reasonable attorney's fees and costs unless special circumstances would render such an award unjust."  Mass. Gen. Laws ch. 151B, § 9.  Under the Health Care Whistleblower Act, the prevailing plaintiff may recover "reasonable litigation costs, reasonable expert witness fees, and reasonable attorneys' fees."  Id. ch. 149.

II.   **LEGAL ANALYSIS**

    A.   **Appropriateness of Fee Award**

The Civil Rights Attorneys Fees Awards Act of l976 authorizes the district court to allow the prevailing party in any Civil Rights Act suit "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.  A plaintiff prevails if she has succeeded on "'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing the suit.'"  Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92 (1989) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).  There is simply no question – none whatsoever – that the plaintiff was the prevailing party and that counsel are entitled to attorneys' fees.  Any suggestion that an over $1.6 million award in a discrimination action does not represent substantial success is – in a word – absurd.

Indeed, it must be said, the litigation surrounding this application for attorney's fees underscores the legitimacy of plaintiff's fee application in general.  *Everything* was litigated to the nth degree; *everything* was a cause célèbre.  Perhaps the fees would have been lower if counsel for both sides had approached the case with a scalpel rather than a bludgeon.[2]

    B.   **Framework for Analysis**

Essentially, the amount for attorney's fees is determined by a two-pronged test.  The first is the calculation of the "lodestar figure," which is the number of hours reasonably expended

---

[2] Defendants imply without saying so directly that I should reduce this award because settlement efforts failed, laying the blame at the feet of the plaintiff.  There may well be instances in which the fee award should reflect the fact that one side or the other was so intransigent and so unreasonable, that it made a simple case needlessly complex.  See LaPlante v. Pepe, 307 F. Supp. 2d 219 (D. Mass. 2004) (citing defendants' litigation tactics in a case involving the straightforward violation of a consent decree as part of the reason for plaintiff's counsel's substantial investment of time).  But mediation is confidential.  In the context of this very complex, high-stakes case, it would be a troubling precedent for the judge whom the parties invited to mediate to turn around and penalize one party or the other for not settling on terms that the judge deemed appropriate.

multiplied by the applicable hourly market rate for legal services.  Hensley v. Eckerhart, 461

U.S. 424, 433 (1983).  The second is an upward or downward adjustment "to account for

exceptional circumstances."  Rogers v. Motta, 655 F. Supp. 39, 43 (D. Mass. 1986).

      1.       **The Lodestar Figure**

      a.       **Reasonable Rate**

A reasonable rate is measured by comparing counsel's regular rates with those of the

marketplace.[3]  Brown Rudnick requests rates of $570 to $615 per hour for Pinkham (partner);

$630 to $695 for Shaw (senior partner); $685 to $735 for Elizabeth Ritvo (partner); $410 to $495

for Lipton (fourth-year associate); $320 to $385 for Gerwin (second-year associate); $320 for

Jennifer Paradee (first-year associate); $250 to $335 for Monica Cafaro (first-year associate);

$225 for five different summer associates; $275 for Susan Oldham (career paralegal); $255 to

$275 for Laura Rappaport (career paralegal); $240 for Holly Matteson (librarian); $240 to $250

---

[3] As the Supreme Court noted,

> We recognize, of course, that determining an appropriate "market rate" for the services of a lawyer is inherently difficult.  Market prices of commodities and most services are determined by supply and demand.  In this traditional sense there is no such thing as a prevailing market rate for the service of lawyers in a particular community.  The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively -- even within a law firm.  Accordingly, the hourly rates of lawyers in private practice also vary widely.  The fees charged often are based on the product of hours devoted to the representation multiplied by the lawyer's customary rate.  But the fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses.  The § 1988 fee determination is made by the court in an entirely different setting: there is no negotiation or even discussion with the prevailing client, as the fee -- found to be reasonable by the court -- is paid by the losing party.  Nevertheless, as shown in the text above, the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate.  And the rates charged in private representations may afford relevant comparisons.

Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

for library staff; and $110 to $240 for administrative staff.  (Increases in the hourly rates during the course of the litigation accounts for the range.)

I find that the rates are reasonable.  These are the rates of large law firms, and they are consistent with the fee awards in other cases.  See Fronk v. Fowler, 22 Mass. L. Rptr. 366 (Mass. Super. May 21, 2007) (finding that WilmerHale hourly rates of $450-575 for partners, $195-360 for associates, and $110-195 for paralegals over four years of litigation, while high, were reasonable in the context of the litigation); Brooks Automation, Inc. V. Blueshift Techs., Inc., 21 Mass. L. Rptr 53 (Mass. Super. Apr. 6, 2006) (awarding hourly rates of $500, $600, and $625 per hour for partners with twelve, nineteen, and twenty-three years of experience, respectively, and awarding hourly rates of $410 for fifth-year associate, $300 for second-year associate, and $260 for first-year associate).  It does not matter that plaintiff provided a chart of hourly rates charged by local large firms, rather than an expert to opine that the rates were reasonable.  These data were helpful, and in any event, what is a reasonable rate for a discrimination case is a matter well within the court's expertise.  As the legislative history to § 1988 suggests, the purpose of fixing a reasonable hourly rate is to arrive at amounts that are "adequate to attract competent counsel, but which do not produce windfalls to attorneys."  S. Rep. No. 94-1011, at 6 (1976). Plainly, these fees are not windfalls.

### 2.   **Number of Hours**

With certain exceptions noted below, I find that the hours expended were reasonable. The case was tenaciously defended on all fronts.  For example, while this was not remotely a case in which summary judgment was appropriate, defendants moved for summary judgment on all counts.  Plaintiff was obliged to respond and appropriately assigned the most junior lawyers

on the team to the task.  The trial took twenty-one days, beginning on January 12, 2009, with

closing arguments on February 18, 2009.  I invited the parties to file written motions in limine

and was greeted with more such motions than have ever before been filed in this session.  The

legal issues were complex; the instructions required multiple drafts and took several days to

prepare.  The jury deliberated for three and a half days before returning a verdict.

I reject defendants' argument that the case was "overstaffed."  Plaintiff's principal trial

team consisted of two attorneys, Pinkham (a litigation partner) and Lipton (a fourth-year

associate), and two paralegals, with additional research and drafting support from junior

associates at the firm.[4]  The size of team was reasonable:  They were confronting a defense team

of four lawyers, two partners for Dr. Day and a partner and a senior associate for BWH, not to

mention in-house counsel and counsel for the insurer.  I also reject defendants' argument that the

invoices reflected "excessive time with respect to communications with Dr. Tuli."[5]

Nevertheless, a lawyer is supposed to exercise billing judgment in applying for fees.  The

Court is to exclude from the fee calculation hours that were not reasonably expended, including

hours that were "excessive, redundant or otherwise unnecessary."  Hensley, 46l U.S. at 434.  A

lawyer is to provide detailed and contemporaneous time records.  I will consider the following

challenges:

---

[4] The fee application did not include the time that attorneys Gerwin and Cafaro spent attending the trial – only their legal work on the case.  In addition, the work of paralegal Oldham was reduced by two hours for every trial day.

[5] Again, this is a way of saying that Dr. Tuli was a demanding client.  Whether that is or is not the case, her lawyer had to be responsive to her queries.  In any event, the notion of spending "excessive time" with one's client is incoherent.

### a.    Core and Non-Core Work

It is reasonable to distinguish between "core" and "non-core" work. Ciulla v. Rigny, 89 F. Supp. 2d 97, 104-05 (D. Mass. 2000). Core work involves legal research, etc.; non-core work encompasses less demanding tasks, such as letter-writing and telephone calls.

Core hours will be compensated at the reasonable rate I have found for a total of $929,797.00 through February 2009, $5,842.50 for the preparation of the fee application in March 2009, and $29,511.00 for post-trial motions in March 2009. Non-core hours will compensated at a 30% reduction for a total of $173,541.90 through February 2009, $1,334.55 for preparation of the fee application in March 2009, and $830.55 for post-trial motions in March 2009.[6] See Charts A, B, F.[7] Fees of $114,331.00 for the work of paralegals and $2,594.50 for the work of library and administrative staff will be awarded in full, except for a small number of hours deducted as explained below at Part II.B.2.b. See Charts D, E.

### b.    Degree of Success

Defendants argue that any award must be "significantly reduced" because plaintiff lost or had marginal success on five of her seven claims, or that the fees somehow should be apportioned between the successful and the unsuccessful claims. I disagree. The core of plaintiff's case was, from the outset, a hostile working environment claim involving events between 2002 and 2007. It involved a central set of facts and allegations, which, for the most part, the jury credited. To be sure, some claims were lost, and on some the damage award was

---

[6] The non-core reduction also takes into account defendants' argument that "plaintiff's lead trial counsel routinely performed work that should have been assigned to associates and paralegals."

[7] These hours do not include the hours excised below.

nominal (slander per se, Massachusetts Health Care Whistleblower Act) or not as high as others ($20,001.00 for Intentional Interference).  But evidence on the winning claims and the less successful claims was interwoven, the prototype of a "common core of facts."  Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 176-77 (1999), rev. denied, 429 Mass. 1105 (1999).  It is neither possible nor appropriate given the purposes of attorney's fee awards to parse the effort expended on overlapping claims.  The successful hostile work environment and retaliation claims necessarily comprised not just the comments made by the various protagonists, but also issues about salary, promotion, and research, which were the subject of the losing claims for disparate treatment and unequal pay.  The defamation and intentional interference claims on which plaintiff received nominal damages were likewise part and parcel of the retaliation and hostile work environment claim.  In effect, the plaintiff's case comprised a single narrative of retaliation and a hostile workplace over the relevant period of time.  Except for the examples described below, disaggregating the work done on different portions of that narrative would be both difficult and unfair.

**c.      Expert Reduction**

Certain hours were eliminated because they involved work on experts whose testimony was disallowed – specifically Dr. Hoffman ($11,688), Dr. Huntoon ($11,236.50), and Ms. Roberts ($7,412.50), see document # 186.  I also excluded attorney hours spent on the testimony of Dr. Barocci of Tab Associates, which related only to plaintiff's unsuccessful Equal Pay Act claims ($28,746).  Finally, several hours were excised for work done in advance of depositions that were never taken, including subpoenas for the Wall Street Journal, University of Florida, Dr. Soni, and Dr. Rhoton of Florida ($7,804.50).  See Chart I.

I will also remove the fees paid to the excluded experts ($55,843.06) and to Dr. Barocci ($70,946.50).  I have allowed fees in connection with Dr. Glick, Donoghue and Associates,[8] and plaintiff's successful opposition to Dr. Britt ($18,961.40).  It is not the case, as defendants represent, that Dr. Glick testified solely in support of claims that the plaintiff lost.  His testimony bore on the question of hostile work environment as well as disparate impact.  See Chart C.

### d.    Other Reductions

I have also deducted the hours of paralegals for "war room cleanup" or for "excluded experts and depositions" ($3,220.00); time spent checking ECF for court opinions ($96.00); and time spent by junior attorneys at the trial that was not already redacted ($2,607.50).  See Charts D, I.  I will not exclude time of counsel waiting for the jury's verdict.  Both sides were nearby in the event of questions from the jury.  It was a convenience to the court and the jury that they did so.  I have also allowed fees for the time spent preparing the fee application, which, given the length of the case, was no easy task.[9]

### 3.    Costs

Plaintiff incurred $62,906.00 in litigation costs through February 2009, which I have allowed in full.  She incurred an additional $6,258.00 in March 2009, from which I have deducted $292.00 in hotel charges for Ms. Roberts.  See Chart H.

---

[8] Dennis Donoghue was a jury consultant.  Defendants apparently used such an expert as well.  I strongly endorse the use of such consultants, particularly in a case of this complexity and length.  See Gertner and Mizner, Law of Juries, § 3:24 (2009).

[9] I will not reduce the award for the time necessary in the preparation and prosecution of the preliminary injunction because plaintiff did not submit a fee application within fourteen days after entry of this Court's Order on the preliminary injunction.  While the Rules may be read to permit such an application for fees, they certainly do not require it.

    **4.**    <u>**Dr. Tuli's Separate Costs**</u>

Using the framework described above, I have excluded Dr. Tuli's costs in connection with experts that were excluded, Dr. Tator (a fact witness whose testimony was excluded), and Dr. Tuli's attendance at trial. I have allowed costs associated with litigation in Canada and the deposition of Dr. Schwartz, totaling $6,909.54. <u>See</u> Chart G.

**III.**    <u>**CONCLUSION**</u>

Accordingly, I **AWARD One Million, Three Hundred Fifty-Two Thousand, Five Hundred Twenty-Five and 94/100 ($1,352,525.94) Dollars**, in toto, for attorneys' fees and costs to the plaintiff. <u>See</u> Chart H.


**SO ORDERED.**

**Date: June 8, 2009**                    <u>/s/ Nancy Gertner</u>
                                                 **NANCY GERTNER, U.S.D.C.**

**Chart A: Core Hours by Attorney through February 2009**

| Attorney | Rate | Core Hours | Amount |
|---|---|---|---|
| Pinkham | $ 570.00 | 308.6 | $ 175,902.00 |
| | $ 615.00 | 475 | $ 292,125.00 |
| Lipton | $ 410.00 | 19.8 | $ 8,118.00 |
| | $ 495.00 | 347.8 | $ 172,161.00 |
| Cafaro | $ 250.00 | 273.9 | $ 68,475.00 |
| Gerwin | $ 320.00 | 69.9 | $ 22,368.00 |
| | $ 385.00 | 329 | $ 126,665.00 |
| Ritvo | $ 685.00 | 5.7 | $ 3,904.50 |
| | $ 735.00 | 3 | $ 2,205.00 |
| Shaw | $ 630.00 | 0.5 | $ 315.00 |
| | $ 695.00 | 44.3 | $ 30,788.50 |
| Paradee | $ 320.00 | 6.3 | $ 2,016.00 |
| *Summers/Law Students* | | | |
| Bair | $ 225.00 | 20.8 | $ 4,680.00 |
| Condon | $ 225.00 | 43.5 | $ 9,787.50 |
| Hackett | $ 225.00 | 4.4 | $ 990.00 |
| List | $ 235.00 | 9.4 | $ 2,209.00 |
| Vigliotti | $ 225.00 | 31.5 | $ 7,087.50 |
| **TOTAL CORE HOURS** | | **1993.4** | **$ 929,797.00** |

Tuli v. Brigham Women's Hosp., Inc., 07-cv-12338

**Chart B: Non-Core Hours by Attorney through February 2009**

| Attorney | Rate | Non-Core Hours | Amount | Rate discounted 30% | Amount |
|---|---|---|---|---|---|
| Pinkham | $ 570.00 | 159.6 | $ 90,972.00 | $ 399.00 | $ 63,680.40 |
| | $ 615.00 | 158.4 | $ 97,416.00 | $ 430.50 | $ 68,191.20 |
| Lipton | $ 410.00 | 8.1 | $ 3,321.00 | $ 287.00 | $ 2,324.70 |
| | $ 495.00 | 33.1 | $ 16,384.50 | $ 346.50 | $ 11,469.15 |
| Cafaro | $ 250.00 | 42.4 | $ 10,600.00 | $ 175.00 | $ 7,420.00 |
| Gerwin | $ 320.00 | 2 | $ 640.00 | $ 224.00 | $ 448.00 |
| | $ 385.00 | 35.9 | $ 13,821.50 | $ 269.50 | $ 9,675.05 |
| Ritvo | $ 685.00 | 2.4 | $ 1,644.00 | $ 479.50 | $ 1,150.80 |
| | $ 735.00 | 10.3 | $ 7,570.50 | $ 514.50 | $ 5,299.35 |
| Shaw | $ 630.00 | 0.7 | $ 441.00 | $ 441.00 | $ 308.70 |
| | $ 695.00 | 6.7 | $ 4,656.50 | $ 486.50 | $ 3,259.55 |
| Paradee | $ 320.00 | 0 | $ - | $ 224.00 | $ - |
| *Summers/Law Students* | | | | | |
| Bair | $ 225.00 | 0.6 | $ - | $ 157.50 | $ 94.50 |
| Condon | $ 225.00 | 0 | $ - | $ 157.50 | $ - |
| Hackett | $ 225.00 | 0.8 | $ 180.00 | $ 157.50 | $ 126.00 |
| List | $ 235.00 | 0 | $ - | $ 164.50 | $ - |
| Vigliotti | $ 225.00 | 0.6 | $ 141.00 | $ 157.50 | $ 94.50 |
| **TOTAL NON-CORE HOURS** | | 461.6 | $ 247,788.00 | | $ 173,541.90 |

## Chart C: Expert Witnesses

| Experts Allowed* | Amount Charged | |
|---|---|---|
| Peter S. Glick, PhD | $ | 13,598.90 |
| Donoghue & Associates | $ | 3,412.50 |
| Opposition to Dr. Britt** | $ | 1,950.00 |
| Total Allowed Expert Fees | $ | 18,961.40 |

* Expert costs disallowed: Dr. Huntoon, Dr. Hoffman, Dr. Roberts, Dr. Barocci of Tab Consulting

** Costs for deposition transcripts for an expert successfully excluded from defendants' case

## Chart D: Paralegals

| Paralegal Hours | Rate | | Hours - Hours Deducted* | Amount | |
|---|---|---|---|---|---|
| Oldham[1] | $ | 275.00 | 312.3 | $ | 85,882.50 |
| Rappaport[2] | $ | 255.00 | 83.2 | $ | 21,216.00 |
| | $ | 275.00 | 26.3 | $ | 7,232.50 |
| Total Paralegal Fees after Reduction | | | | $ | 114,331.00 |

*Removed 7.5 hours for Oldham and 4.5 hours (4 at $255 and 0.5 at $275) for Rappaport

1. Removed "Warroom Cleanup"
2. Removed charges for excluded experts and depositions

## Chart E: Library & Administrative Staff

| Paralegal Hours | Rate | | Hours | Amount | |
|---|---|---|---|---|---|
| Matteson (library) | $ | 240.00 | 1.7 | $ | 408.00 |
| Vlachos (library) | $ | 250.00 | 0.8 | $ | 200.00 |
| Carpiniello (admin) | $ | 110.00 | 0.4 | $ | 44.00 |
| Federico (admin) | $ | 110.00 | 0.3 | $ | 33.00 |
| Glazier (admin) | $ | 125.00 | 3.9 | $ | 487.50 |
| | $ | 130.00 | 0.5 | $ | 65.00 |
| Klock (admin) | $ | 200.00 | 0.7 | $ | 140.00 |
| Knott (admin) | $ | 100.00 | 0.1 | $ | 10.00 |
| | $ | 125.00 | 0.2 | $ | 25.00 |
| Matthews (admin) | $ | 130.00 | 0.2 | $ | 26.00 |
| | $ | 200.00 | 2.3 | $ | 460.00 |
| Winship (admin) | $ | 240.00 | 2.9 | $ | 696.00 |
| Total Library & Admin Staff | | | | $ | 2,594.50 |

## Chart F: Core and Non-Core Hours for March of 2009

**Preparation of Fees through**

| Attorney | Rate | Non -Core Hours | Core Hours |
|---|---|---|---|
| Pinkham | $ 615.00 | 3.1 | 9.5 |
| Total Fee Amounts* | | $ 1,334.55 | $ 5,842.50 |

**Total Fees for March 2009**

| Type | Amount |
|---|---|
| Preparation of fees through Feb. 2009 | $ 7,177.05 |
| Post-trial motions | $ 30,341.55 |

**Post Trial Motions in March 2009**

| Attorney | Rate | Non -Core Hours | Core Hours |
|---|---|---|---|
| Pinkham | $ 615.00 | 1.5 | 6.6 |
| Lipton | $ 495.00 | 0.3 | 22.0 |
| Cafaro | $ 335.00 | 0 | 20.3 |
| Gerwin | $ 385.00 | 0.3 | 19.9 |
| Admin Staff | $ 200.00 | 0 | 0.5 |
| Total Fee Amounts* | | $ 830.55 | $ 29,511.00 |

* Hourly rate for non-core hours are the same as on Chart B

**Chart G: Dr. Tuli's Separate Costs**

**Canada (in Canadian Dollars) in August 2008**

| Type | Rate ($C) | | Total ($C) | |
|---|---|---|---|---|
| Attorney Fees and Costs, David Shiller* | | | | |
|    Core Hours (12.7 hours) @ full rate | $ | 350.00 | $ | 4,445.00 |
|    Non-Core Hours (9.6 hours) @ 30% discounted rate | $ | 245.00 | $ | 2,352.00 |
|    Costs | | | $ | 1,215.20 |
|    GST (Canadian Taxes) | | | $ | 451.01 |
| Amount awarded by Toronto Court | $ | 1,500.00 | $ | (1,500.00) |
| Tuli's Travel within Toronto (Airfare, Taxi, parking, and photocopying costs)** | | | $ | 271.91 |
| **Total Costs in Canadian Dollars** | | | **$** | **7,235.12** |
| **Exchange to U.S. Dollars for Aug. 22, 2008*** | | 0.955 | **$** | **6,909.54** |

* Costs associated with litigation in Canada and deposition of Dr. Schwartz

** Dr. Tuli asks for $280.51 USD

*** Exchange rate according to www.xe.com

**Costs Not Allowed**

| | | |
|---|---|---|
| Travel Costs for Lora Roberts | $ | 1,163.40 |
| Parking costs for depositions and meetings with counsel | $ | 1,351.00 |
| Travel Costs for Dr. Charles Tator | $ | 1,637.90 |
| Parking costs for attending trial | $ | 775.00 |
| **Total Costs not allowed** | **$** | **4,927.30** |

## Chart H: Total Attorney Fees and Costs

**Award Sought by plaintiff**

| Type | | Amount |
|---|---|---|
| Fees through Feb 2009* | $ | 1,367,704.50 |
| Costs through Feb 2009 | $ | 62,906.00 |
| Experts' fees | $ | 145,750.96 |
| March 2009 application for fees through Feb | $ | 7,749.00 |
| March 2009 post-trial motions | $ | 30,697.50 |
| March 2009 costs | $ | 6,258.00 |
| Costs to Sagun Tuli | $ | 13,728.00 |
| Total Requested | $ | 1,634,793.96 |

**Total Amount Awarded By the Court after Reductions**

| Type | | Amount |
|---|---|---|
| Fees through Feb 2009* | $ | 1,220,264.40 |
| Costs through Feb 2009 | $ | 62,906.00 |
| Experts' fees | $ | 18,961.40 |
| March 2009 application for fees through Feb | $ | 7,177.05 |
| March 2009 post-trial motions | $ | 30,341.55 |
| March 2009 costs | $ | 5,966.00 |
| Costs to Sagun Tuli | $ | 6,909.54 |
| **Total Allowed** | **$** | **1,352,525.94** |

\* For attorneys, paralegals, library staff, and administrative staff

**Chart I: Hours reduced for various reasons through February 2009**

| Attorney | At Rate | | Total hours disallowed |
|---|---|---|---|
| Pinkham | $ | 570.00 | 16.4 |
| | $ | 615.00 | 48.1 |
| Lipton | $ | 410.00 | 4.5 |
| | $ | 495.00 | 7.1 |
| Cafaro | $ | 250.00 | 6.8 |
| Gerwin | $ | 320.00 | 0.3 |
| | $ | 385.00 | 8.5 |
| Ritvo | $ | 685.00 | 0 |
| | $ | 735.00 | 0 |
| Shaw | $ | 630.00 | 0 |
| | $ | 695.00 | 30.3 |
| Paradee | $ | 320.00 | 0 |
| Summers/Law Students | | | |
| Bair | | 225.00 | 0 |
| Condon | $ | 225.00 | 0 |
| Hackett | $ | 225.00 | 0 |
| List | $ | 235.00 | 0 |
| Vigliotti | $ | 225.00 | 0 |
| **Total Hours disallowed** | | | **122** |

**Hours eliminated include:**

1. Work on experts not allowed at trial: Hoffman ($11,688), Huntoon ($11,236.50), Roberts ($7,412.50)
2. Work done for depositions that were never taken (WSJ, University of Florida, Dr. Soni, Dr. Rhoton - $7,804.50)
3. Hours spent on the testimony of Dr. Barocci of Tab Associates ($28,746)
4. Attorney checking ECF for court opinions ($96.00)
5. Junior Attorneys at trial that were not redacted ($2,607.50)